TODD M. LANDER (BAR NO. 173031)
todd.lander@ffslaw.com
MARK B. MIZRAHI (BAR NO. 179384)
mark.mizrahi@ffslaw.com
FREEMAN, FREEMAN & SMILEY, LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone:  (310) 255-6100
Facsimile:  (310) 255-6200

Attorneys for Plaintiff,
POCKET SOCKS, INC.

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| POCKET SOCKS, INC., a California corporation,<br><br>           Plaintiff,<br><br>    vs.<br><br>VIDA ENTERPRISE CORPORATION, a California corporation; and DOES 1-10, inclusive,<br><br>        Defendants. | Case No.  2:21-cv-06131<br><br>**COMPLAINT FOR:**<br><br>**1.  FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1)-(2));**<br>**2.  FEDERAL TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN AND FALSE DESCRIPTION (15 U.S.C. § 1125);**<br>**3.  COMMON LAW TRADEMARK INFRINGEMENT;**<br>**4.  COMMON LAW TRADE NAME INFRINGEMENT;**<br>**5.  CALIFORNIA COMMON LAW UNFAIR COMPETITION;**<br>**6.  CALIFORNIA STATUTORY UNFAIR COMPETITION; AND**<br>**7.  BREACH OF CONTRACT.**<br><br>**DEMAND FOR JURY TRIAL** |

/ / /

/ / /

/ / /

/ / /

/ / /

Plaintiff POCKET SOCKS, INC., a California corporation ("Plaintiff") brings this action against defendants VIDA ENTERPRISE CORPORATION, a California corporation ("Vida"), and DOES 1-10 (collectively, "Defendants") for injunctive relief and damages under the laws of the United States and the State of California as follows:

## JURISDICTION AND VENUE

1.      This action arises under the trademark laws of the United States, 15 U.S.C. §§ 1114 and 1125(a), and under statutory and common law trademark infringement, tradename infringement, unfair competition, and breach of contract.

2.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367, and 15 U.S.C. §§ 1114, 1116, 1117, 1121, and 1125.

3.      Venue lies in this judicial district pursuant to 28 U.S.C. § 1391.

4.      This Court has personal jurisdiction over Defendants, as Defendants are doing business in California and this District, including the acts complained of herein, and are subject to the jurisdiction of this Court.  In fact, defendant Vida is a California corporation with its principal place of business in this District.  In addition, Defendants knowingly infringed on Plaintiff's trademark rights, knowing that Plaintiff is a California resident, and thereby purposefully directed their activities towards California.

## NATURE OF THE ACTION

5.      This is an action for trademark infringement, unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), California Bus. & Prof. Code § 17200, *et seq*., and the common law, and for breach of contract.

6.      Plaintiff's POCKET SOCKS® branded hosiery – representative samples of which are depicted in **Exhibit 1** hereto – have gained substantial notoriety in the marketplace.  Plaintiff's POCKET SOCKS® branded hosiery feature highly distinctive and widely recognized design elements, which Plaintiff

pioneered and created. Plaintiff markets its POCKET SOCKS® branded hosiery on social media, at tradeshows, through various retail outlets, including pocketsocks.com, Etsy.com, and amazon.com, depicting images of its proprietary POCKET SOCKS® branded hosiery. Plaintiff's POCKET SOCKS® branded hosiery have also been featured by and profoundly covered by various media outlets.

7. Defendants are intellectual property pirates. Now that Plaintiff's POCKET SOCKS® branded hosiery have exploded in popularity, Plaintiff discovered that Defendants began offering to sell and selling directly competitive products in connection with the identical designation POCKET SOCKS – a trademark that infringes Plaintiff's registered POCKET SOCKS® trademark. In fact, defendant Vida has continued to offer for sale and sell the Infringing Socks (defined below), despite its written agreements committing to cease such use.

8. Accordingly, to prevent and remediate the rampant consumer confusion and misappropriation of Plaintiff's POCKET SOCKS® trademark, resulting from Defendants' unauthorized promotion and sale of the Infringing Socks, and to compensate the Plaintiff for its injuries, Plaintiff seeks immediate and permanent injunctive relief, compensatory damages, disgorgement of Defendants' profits, statutory damages, punitive damages, Plaintiff's reasonable attorneys' fees and expenses, a product recall, and corrective advertising sufficient to address Defendants' wrongdoing.

## THE PARTIES

9. Pocket Socks, Inc. is a California corporation with its principal place of business located in Vernon, California.

10. On information belief, defendant Vida Enterprise Corporation ("Vida") is a California corporation with its principal place of business in Los Angeles, California.

11. On information belief, Vida is in the business of manufacturing abroad

-3-
COMPLAINT

and importing into the United States, among other things, hosiery – modeled after Plaintiff's POCKET SOCKS® branded products – under the identical POCKET SOCKS trademark (the "Infringing Socks"), representative specimens of which are attached hereto as **Exhibit 2**.

12.     The true names and capacities of defendants sued herein as DOES 1-10, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when the same are ascertained.

13.     Upon information and belief, at all relevant times mentioned in this Complaint, Defendants, and each of them, were acting in concert and active participation with each other in committing the wrongful acts alleged herein, and were the agents of each other and were acting within the scope and authority of that agency and with the knowledge, consent and permission of one another.

## BACKGROUND FACTS

### Plaintiff and Its POCKET SOCKS® Trademark

14.     Plaintiff is engaged in the business of creating, manufacturing, distributing and selling unique sock designs in connection with Plaintiff's POCKET SOCKS® trademark.  (*See, e.g.,* **Exhibit 1**.)

15.     Plaintiff has been in business for nearly 10 years and in that time has developed a reputation for producing high quality, unique, creative and innovative hosiery that are highly prized in the industry.

16.     Plaintiff exerts great efforts to promote and preserve its image identity and the image and identity of its high quality hosiery, including by creating distinctive designs and marks for use on its products and seeking U.S. trademark registrations for such marks and designs, including the POCKET SOCKS® trademark at issue in this Complaint.

17.     Indeed, Plaintiff is the sole and exclusive owner of United States Federal Trademark Registration No. 4200363 for the trademark POCKET SOCKS

for hosiery. A true and correct copy of the Certificate of Registration for the POCKET SOCKS trademark registration number 4200363 is attached as **Exhibit 3**.

18. Plaintiff is also the sole and exclusive owner of United States Federal Trademark Registration No. 4414045 for the trademark POCKET SOCKS for hosiery. A true and correct copy of the Certificate of Registration for the POCKET SOCKS trademark registration number 4414045 is attached as **Exhibit 4**.

19. Since numerous years before Defendants adopted and used Plaintiff's POCKET SOCKS trademark, Plaintiff and its predecessor-in-interest have continuously been promoting and using the POCKET SOCKS® trademark in connection with its branded sock line through social media, television, and other means common to the trade.

20. Plaintiff is the sole owner of all right, title and interest in and to the POCKET SOCKS® trademark and the rights to enforce that trademark. Indeed, Plaintiff acquired all right, title, and interest in the POCKET SOCKS® trademark, together with the goodwill symbolized thereby and the together with all claims for damages by reason of past and future infringement thereof or act of unfair competition relating thereto, with the right to sue for damages, and collect the same for its own use and benefit, and for the use and benefit of its successors, assigns, and legal representatives.

21. Plaintiff sells a broad range of POCKET SOCKS® branded hosiery that comprise, among other things, hosiery with an integrated, zippered storage compartment.

22. Continuously and without interruption, since long before Defendants began selling the Infringing Socks, Plaintiff has expended a great deal of time, effort, and money in the advertising and promotion of its POCKET SOCKS® branded goods. Due to plaintiff's innovative design, extensive marketing efforts, media coverage, and market penetration, the POCKET SOCKS® trademark has further acquired distinctiveness in the marketplace when applied to hosiery. Indeed,

because of Plaintiff's extensive promotional activities and widespread display of its POCKET SOCKS® branded hosiery directed to the public, and as a consequence of Plaintiff's fair and honorable dealings with its customers, the relevant consuming public has come to recognize and associate hosiery bearing the POCKET SOCKS® trademark as high quality goods connected with or offered by a single source, Plaintiff.  The POCKET SOCKS® trademark has valuable goodwill and consumer recognition associated with it and has come to symbolize the valuable goodwill and reputation of Plaintiff.

23.	In addition to being original and inherently distinctive, Plaintiff's POCKET SOCKS® trademark is widely recognized by consumers as a designator of a single source, thereby acquiring secondary meaning amongst the relevant consumers in the marketplace.

24.	In addition to marketing and selling them through numerous retail outlets nationwide, Plaintiff markets and sells its POCKET SOCKS® branded hosiery on its website <pocketsocks.com> featuring dozens of copyright-protected photographs of its hosiery. Copies of representative pages from <pocketsocks.com> are attached as **Exhibit 5**.

25.	Further adding to the secondary meaning acquired by the POCKET SOCKS® trademark in the marketplace, Plaintiff's POCKET SOCKS® branded hosiery has been featured on numerous high-profile television programs,, including *Good Morning America* in December 2019, ABC's *Live! With Kelly & Ryan* in February 2020, *The View* in June 2020, *Good Morning America* in September 2020, *Good Morning America* again in November 2020, *The Kelly Clarkson Show* in December 2020, *GMA 3* in March 2021, *Small Business Spotlight - The View* in May 2021, and *The View* again in June 2021.

26.	As a direct result of Plaintiff's efforts at promoting and building its brand, Plaintiff's POCKET SOCKS® branded hosiery has exploded in popularity, creating substantial demand for and interest in, and generating enormous goodwill

in, POCKET SOCKS® branded hosiery leading to wide recognition of the POCKET SOCKS® trademark throughout the United States.

27. In fact, POCKET SOCKS® branded hosiery are sold through numerous of retailers including some of the largest retailers in the country, including, Amazon.com, Etsy, Groupon, Gromets.com, Zulily.com, and select brick-and-mortar retailers, among numerous other outlets.

28. Because of POCKET SOCKS® branded hosiery's success and popularity, consumers have come to associate Plaintiff's high-quality hosiery with the POCKET SOCKS® trademark and, conversely, have come to recognize the POCKET SOCKS® branded hosiery trademark as a designation of source. At the same time, the success of Plaintiff's POCKET SOCKS® branded goods has attracted many imitators, such as Defendants, as discussed in greater detail below.

## **Defendants' Unlawful Conduct**

29. At the outset, none of the defendants to this action is licensed or otherwise authorized by Plaintiff to market or distribute products bearing Plaintiff's POCKET SOCKS® trademark.

30. Upon information and belief, since approximately late 2019 or early 2020, notably well after Plaintiff's novel POCKET SOCKS® branded hosiery hit the marketplace and Plaintiff established its rights and reputation in its POCKET SOCKS® trademark, Defendants have offered for sale and sold various socks – similar in overall look and feel to Plaintiff's POCKET SOCKS® branded hosiery – bearing the POCKET SOCKS trademark, a trademark that is identical in sight, sound, and meaning with the POCKET SOCKS® trademark, through Vida's <angelina.shop> website, Amazon.com, Groupon, and other retail outlets.

31. Defendants have caused the Infringing Socks to enter interstate commerce and/or to be transported or used in interstate commerce, and Plaintiff's POCKET SOCKS® branded socks and Defendants' Infringing Socks are sold in the same or similar channels of trade to the same or similar classes of customers.

32.     Rather than investing in creating its own designs and identity, Defendants elected to copy Plaintiff's concept and, in order to trade off of the goodwill established in the POCKET SOCKS® trademark, adopted and use the confusingly similar POCKET SOCKS trademark in connection with the marketing and sale of the Infringing Socks.

33.     In February 2020, Plaintiff observed the Infringing Socks being offered for sale on Amazon.com and Vida's website.  On February 20, 2020, Plaintiff sent written correspondence to defendant Vida demanding that it cease and desist from further selling the knock-off products.

34.     On February 24, 2020, defendant Vida's attorney responded, in part, by stating as follows:

> My client will accommodate your request to stop using the term "pocket socks".  On February 20, 2020, they issued an order to recall all Fulfillment By Amazon inventory for products with packaging that uses the term "pocket socks," which deactivated all related Amazon.com listings.  At the same time, my client removed all references to "pocket socks" on its website, www.angelina.shop.  Effective as of February 20, 2020, Vida will not sell any goods with packaging that uses the term "pocket socks" and it will discontinue all marketing using the term "pocket socks".  Also, Vida has not apply to register "pocket socks" as a trademark.

In follow-up communications and correspondence, Vida's attorney confirmed these representations to Plaintiff, and further assured Plaintiff that it would be changing the packaging for its socks to remove all references to Pocket Socks.  Plaintiff relied on these representations in deciding not to pursue the matter further with defendant Vida.  The assurances and agreements made by Vida in favor of Plaintiff shall be referred to herein as the "Forbearance Agreement."

35.     Despite these written assurances, in 2021, Plaintiff discovered that defendant Vida continued to infringe upon Plaintiff's POCKET SOCKS®

trademark by continuing to offer for sale and sell the Infringing Socks, necessitating this Complaint.

36.     Plaintiff is informed and believes that Defendants, without Plaintiff's consent or permission, continue to sell, advertise, promote, display, and distribute, socks bearing the confusingly similar POCKET SOCKS trademark.

37.     The activities of Defendants in copying, distributing, advertising, selling, offering for sale and otherwise using the POCKET SOCKS trademark in connection with the Infringing Socks for directly competitive goods constitutes false designation of origin regarding sponsorship of those goods and falsely represents to the public that the Infringing Socks originate from the same source as those goods sold in connection with Plaintiff's POCKET SOCKS® trademark, and/or that the Infringing Socks have been sponsored, approved or licensed by Plaintiff, or are in some way affiliated or connected with Plaintiff.  Such activities of Defendants are likely to confuse, mislead, and deceive Defendants' and Plaintiff's customers, purchasers, and members of the public as to the origin of Defendant's hosiery bearing the POCKET SOCKS trademark, or to cause such persons to believe that Defendants' Infringing Socks and/or Defendants have been sponsored, approved, authorized, or licensed by Plaintiff or in some way affiliated or connected with Plaintiff, all in violation of, among other things, 15 U.S.C. §§ 1114 and 1125(a).

38.     Upon information and belief, the activities of Defendants were done willfully with full knowledge of the falsity of such designations of origin and false descriptions or representations, with the intent to trade on the enormous goodwill Plaintiff has earned in its POCKET SOCKS® trademark, and with the intent to cause confusion, and to mislead and deceive the purchasing public into believing that the Infringing Socks are directly sponsored by, authorized, by, associated with, or originate from Plaintiff.

39.     Defendants, by their unauthorized copying and use of a trademark confusingly similar with Plaintiff's POCKET SOCKS® trademark, have and are

engaging in acts of trademark infringement, breach of contract, unfair competition, unlawful appropriation, unjust enrichment, wrongful deception of the purchasing public, and unlawful trading on Plaintiff's good will garnered in its POCKET SOCKS® trademark.  Defendants have damaged the reputation, business and good will of Plaintiff nationally and in this judicial district.

40.     Upon information and belief, Defendants are currently engaged in such infringing activities and unless enjoined by the Court will continue such infringing activities.

41.     Plaintiff has no adequate remedy at law.  Thus said activities of Defendants have caused and, if not enjoined, will continue to cause irreparable, immediate and impending harm and damage to Plaintiff's business, and to the business, business reputation and good will of Plaintiff.

## COUNT ONE

### (Federal Trademark Infringement – 15 U.S.C. § 1114(1)-(2))

(Against All Defendants)

42.     Plaintiff repeats and realleges each of the allegations above as if fully set forth herein.

43.     Without Plaintiff's authorization or consent, and having knowledge of Plaintiff's prior rights in its registered POCKET SOCKS® trademark, Defendants have manufactured, distributed, advertised, offered for sale and sold highly similar socks bearing the identical trademark, POCKET SOCKS, to the consuming public in direct competition with Plaintiff, in or affecting interstate commerce.

44.     Defendants have caused a likelihood of confusion, mistake and deception as to the source of origin, sponsorship, authorization, association, or affiliation of Defendants' goods, such that there is a likelihood that the public will be confused into believing that the products Defendants promote, distribute, and sell are directly sponsored by, associated with, or originate from the same source as Plaintiff's hosiery sold in connection with its POCKET SOCKS® trademark.

45.     Defendants' use of the POCKET SOCKS® trademark violates section 32(1) and (2) of the Lanham Act, 15 U.S.C. § 1114(1)-(2), because it constitutes unauthorized, willful and/or deliberate use in commerce of reproductions, counterfeits, copies, and/or colorable imitations of Plaintiff's federally-registered mark in connection with the sale, offering for sale, distribution, and advertising of products and services in a manner likely to cause confusion, mistake, and deception.

46.     On information and belief, Defendants' acts have been willful and deliberate.

47.     As a direct and proximate result of Defendants' unlawful conduct, Defendants have misappropriated Plaintiff rights in the POCKET SOCKS® trademark, as well as the goodwill associated therewith, and have diverted sales and profits from Plaintiff to Defendants.  Thus, as a direct and proximate result of Defendants' acts of willful infringement, Plaintiff has suffered damage to its valuable brand and reputation, and other damages in an amount to be proven at trial, including Defendants' profits and Plaintiff's lost profits.

48.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiff, unless Defendants are restrained by this Court. Plaintiff has no adequate remedy at law with regard to Defendants' infringing conduct.  Accordingly, Plaintiff is entitled to a preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116, restraining and enjoining Defendants' and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using Plaintiff's POCKET SOCKS® trademark, or any colorable imitation or variation thereof, in connection with the sale and/or marketing of any products.

49.     Defendants' aforesaid acts are exceptional within the meaning of 15 U.S.C. § 1117.

/ / /

/ / /

-11-
COMPLAINT

## SECOND COUNT

**(Trademark Infringement, False Designation of Origin and False Description –**

**15 U.S.C. §1125)**

(Against All Defendants)

50.     Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 49 as though fully set forth herein.

51.     The POCKET SOCKS® trademark is non-functional and highly distinctive, and has become associated in the public mind with plush toy products of the highest quality and reputation finding their source in Plaintiff.

52.     Plaintiff owns all right, title and interest in and to the POCKET SOCKS® trademark throughout the United States.

53.     Without Plaintiff's authorization or consent, and having knowledge of Plaintiff's prior rights in the POCKET SOCKS® trademark, Defendants have manufactured, distributed, advertised, offered for sale and sold highly similar socks bearing the identical trademark, POCKET SOCKS, to the consuming public in direct competition with Plaintiff, in or affecting interstate commerce.

54.     Defendants have caused a likelihood of confusion, mistake and deception as to the source of origin, sponsorship, authorization, association, or affiliation of Defendants' goods, such that there is a likelihood that the public will be confused into believing that the products Defendants promote, distribute, and sell are directly sponsored by, associated with, or originate from the same source as Plaintiff's hosiery sold in connection with the POCKET SOCKS® trademark.

55.     Defendants' acts described above constitute trade mark infringement, false designation of origin, false description, and false representation in violation of 15 U.S.C. §1125(a).  Such activities are harming Plaintiff's ability to protect the integrity of its products and the goodwill of its valuable POCKET SOCKS® trademark.

/ / /

56.     As a direct and proximate result of Defendants' unlawful conduct, Defendants have misappropriated Plaintiff's rights in the POCKET SOCKS® trademark, as well as the goodwill associated therewith, and have diverted sales and profits from Plaintiff to Defendants.  Thus, as a direct and proximate result of Defendants' acts of willful infringement, Plaintiff has suffered damage to its valuable brand and reputation, and other damages in an amount to be proven at trial, including Defendants' profits and Plaintiff's lost profits.

57.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiff, unless Defendants are restrained by this Court. Plaintiff has no adequate remedy at law with regard to Defendants' infringing conduct.  Accordingly, Plaintiff is entitled to a preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116, restraining and enjoining Defendants' and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using Plaintiff's POCKET SOCKS® trademark, or any colorable imitation or variation thereof, in connection with the sale and/or marketing of any products.

58.     Defendants' aforesaid acts are exceptional within the meaning of 15 U.S.C § 1117.

### THIRD COUNT

**(Common Law Trademark Infringement)**

(Against all Defendants)

59.     Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 41 and 51-54 as though fully set forth herein.

60.     Defendants have violated Plaintiff's exclusive common law rights in the POCKET SOCKS® trademark.

61.     Plaintiff has continuously used its POCKET SOCKS® trademark to identify its goods in California and elsewhere, and to distinguish them from goods

of a different origin.  As such, Plaintiff has common law rights to the POCKET SOCKS® trademark.

62.     Defendants' acts described above constitute trade mark infringement under the common laws of the United States, including California.

63.     As a direct and proximate result, Plaintiff has suffered injury and harm and will continue to suffer such harm, including money damages, the amount of which Plaintiff will prove at trial.

64.     Plaintiff has no adequate remedy at law.  Thus said activities of Defendants have caused, and if not enjoined will continue to cause, irreparable harm and damage to the rights of Plaintiff in its POCKET SOCKS® trademark and to its business reputation and good will.

65.     Upon information and belief, Defendants have engaged in their unlawful conduct alleged herein intentionally, maliciously, fraudulently and oppressively entitling Plaintiff to punitive damages in an amount to be determined at trial.

## **FOURTH COUNT**

### **(For Common Law Trade Name Infringement)**

(Against All Defendants)

66.     Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 41 as though fully set forth herein.

67.     Plaintiff has continuously done business under the corporate and trade name Pocket Socks, Inc. for nearly a decade, since February 2013.  Plaintiff has built up valuable goodwill in this corporate and trade name, and it has come to be associated exclusively with Plaintiff's business by customers and prospective customers of Plaintiff' goods.  Plaintiff is presumed to have the exclusive right to use as a trade name its corporate name under which it registered as well as any confusingly similar trade names.  *See* Corporations Code section 200 and Business & Professions Code section 14415.

68.     Plaintiff has also used the trade name "Pocket Socks" for many years on goods, marketing material, and otherwise, and is generally known as "Pocket Socks" by consumers and prospective consumers of its goods, giving Plaintiff the exclusive right to the use of the "Pocket Socks" trade name.

69.     By using the POCKET SOCKS designation in connection with the Infringing Socks, Defendants are using a name that is identical to or, at a minimum, substantially and confusingly similar to Plaintiff's Pocket Socks corporate and trade name.  Defendants' use of the Pocket Socks name in connection with the Infringing Socks creates a likelihood that Plaintiff's customers and potential customers, and the public generally will be confused or misled as to the source of Defendants' Infringing Socks, in that they are likely erroneously to believe that such goods are affiliated with or endorsed by Plaintiff, when in fact they are not.

70.     Defendants' continuing use of the "Pocket Socks" trade name constitutes an infringement and violation of Plaintiff's rights in its corporate name and trade name.

71.     As a direct and proximate result, Plaintiff has suffered injury and harm and will continue to suffer such harm, including money damages, the amount of which Plaintiff will prove at trial.

72.     Defendants, unless otherwise restrained, will continue to use the trade name "Pocket Socks" in violation of Plaintiff's rights.  As a result, the public generally will be misled and deceived into believing that Defendants' Infringing Socks are authorized by and/or affiliated with Plaintiff when they are not, all to the irreparable injury of Plaintiff and its business and goodwill and to the unjust enrichment of Defendants.  Plaintiff has no adequate remedy at law, in that it is difficult to ascertain the amount of damages to Plaintiff's business and goodwill resulting from, among other things the confusion engendered by Defendants' offering for sale and sale of the Infringing Socks.

/ / /

## FIFTH COUNT

### (California Common Law Unfair Competition)

(Against all Defendants)

73.     Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 41 and 51-54, 60-62, and 67-70, as though fully set forth herein.

74.     This claim arises under the common law of the State of California relating to unfair competition.

75.     Defendants' use of the POCKET SOCKS trademark and tradename in connection with the Infringing Socks constitute reproductions, copies and colorable imitations of Plaintiff's POCKET SOCKS® trademark and tradename, and constitutes unfair competition, and is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source of the parties' products and to cause purchasers to believe Defendants' products are authentic products of Plaintiff when in fact they are not.

76.     Upon information and belief, Defendants have intentionally appropriated Plaintiff's POCKET SOCKS® trademark and tradename with the intent of causing confusion, mistake, and deception as to the source of their goods and with the intent of palming off their goods as those of Plaintiff and to place others in the position to palm off their goods as those of Plaintiff.

77.     By their actions in infringing Plaintiff's POCKET SOCKS® trademark and tradename, Defendants are improperly trading upon the reputation and good will of Plaintiff and are impairing Plaintiff's valuable rights in its POCKET SOCKS® trademark and tradename.

78.     Defendants' unauthorized activities as alleged herein constitute unfair competition, and are likely to illegitimately harm Plaintiff's competitive position in the marketplace.

/ / /

/ / /

5013319.2

79.     As a direct and proximate result, Plaintiff has suffered injury and harm and will continue to suffer such harm, including money damages, the amount of which Plaintiff will prove at trial.

80.     Plaintiff has no adequate remedy at law.  Thus said activities of Defendants have caused, if not enjoined, will continue to cause irreparable harm and damage to the rights of Plaintiff in its POCKET SOCKS® trademark and tradename, and to its business reputation and good will.

81.     Upon information and belief, Defendants have engaged in their unlawful conduct alleged herein intentionally, maliciously, fraudulently and oppressively entitling Plaintiff to punitive damages in an amount to be determined at trial.

## SIXTH COUNT

### (California Statutory Unfair Competition –
### California Bus. & Prof. Code § 17200, *et seq.*)

(Against all Defendants)

82.     Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 41 and 51-54, 60-62, 67-70, and 74-78, as though fully set forth herein.

83.     By reason of the foregoing, Defendants have been, and are, engaged in "unlawful, unfair or fraudulent business practices" in violation of California Business and Professional Code §17200 *et seq.*

84.     Said activities of Defendants have caused, if not enjoined, and will continue to cause irreparable harm and damage to the rights of Plaintiff in its POCKET SOCKS® trademark and tradename and to its business reputation and good will.  Plaintiff has no adequate remedy at law for these wrongs and injuries. The damage to Plaintiff includes harm to its goodwill and reputation in the marketplace that money alone cannot compensate.  Accordingly, Plaintiff is entitled to a preliminary and permanent injunction restraining and enjoining Defendants' and their agents, servants, and employees, and all persons acting thereunder, in concert

with, or on their behalf, from using Plaintiff's POCKET SOCKS® trademark, or any colorable imitation or variation thereof, in connection with the sale and/or marketing of any products.  Plaintiff is further entitled to recover its costs and attorneys' fees incurred in bringing and prosecuting this action.

## SEVENTH COUNT

### (Breach of Contract)

(Against Defendant Vida)

85.    Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 41 as though fully set forth herein.

86.    Vida entered into a valid and binding agreement with Plaintiff.  In this agreement, Vida, among other things, acknowledged and expressly agreed that it would cease all use of the term "pocket socks," in connection with its goods or otherwise.

87.    In reliance on the Forbearance Agreement, Plaintiff refrained from filings a lawsuit against Vida, seeking an injunction against Vida, and from pursuing damages against Vida.

88.    Vida has breached the Forbearance Agreement by continuing to offer for sale and sell the Infringing Socks, and otherwise using the POCKET SOCKS® trademark and tradename, without Plaintiff's consent.

89.    Plaintiff has performed all other conditions, covenants, and promises under the afore-described written agreements, on its part to be performed.

90.    As a direct and proximate result of Vida's breach of contract, Plaintiff has been damaged in an amount to be proved at trial.

91.    As a result of Vida's breaches of contract Plaintiff was harmed, such that Plaintiff is entitled to a restraining order, preliminary and permanent injunctive relief, attorneys' fees and costs, and damages.

/ / /

/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     That Defendants, their officers, members, shareholders, directors, agents, servants, employees, successors, licensees, representatives, successors, assigns, and all persons acting in concert or participation with them, be permanently enjoined and restrained from:

(i) Manufacturing, importing, distributing, displaying, advertising, offering to sell or selling the Infringing Socks or any goods bearing the POCKET SOCKS® trademark or tradename, or any confusingly similar designations;

(ii)  Using the POCKET SOCKS® trademark, Pocket Socks tradename, or any confusingly similar designation, in connection with the importation, distribution, sale, offer for sale, or promotion of any goods, including hosiery;

(iii) Using any false designation of origin, or representing or suggesting directly or by implication that Defendants (or any brands created by Defendants), or their hosiery, are affiliated with, associated with, authorized by, or otherwise connected to Plaintiff, the POCKET SOCKS® trademark, the Pocket Socks tradename, or that Defendants are authorized by Plaintiff to use the POCKET SOCKS® trademark or the Pocket Socks tradename;

(iv) Engaging in any other activity constituting unfair competition with Plaintiff, or constituting infringement of the POCKET SOCKS® trademark or the Pocket Socks tradename;

(v) from infringing or contributing to the infringement of any of Plaintiff's trademarks or trade names, including without limitation the POCKET SOCKS® trademark and/or Pocket

Socks tradename, or otherwise engaging in unfair competition with Plaintiff in any manner or engaging in any conduct tending to falsely represent or likely to confuse, mislead or deceive suppliers, purchasers, or any member of the public into thinking that Defendants or any of their products are affiliated with Plaintiff or that Plaintiff has otherwise sponsored, approved, or licensed any products or services of Defendants; and

(vi) Assisting, inducing, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (v) above, or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (v) above;

2.    That Defendants be directed to file with the Court and serve on Plaintiff, within thirty (30) days after entry of a final injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

3.    That Plaintiff has superior rights to exclusive use in the POCKET SOCKS® trademark and tradename in connection with apparel-related goods;

4.    That Defendants shall not in the future file or maintain an application for registration or a registration of any mark or name that comprises "Pocket Socks", or any designation(s) confusingly similar thereto, with the United States Patent and Trademark Office or any other governmental or state authority;

5.    That the Court direct any third parties providing services to Defendants in connection with any infringing and/or enjoined conduct, including social media platforms (*e.g.*, Instagram, Facebook, Twitter), online marketplaces (*e.g.*, Alibaba, eBay, Etsy, AliExpress, Amazon, Taobao, Groupon), online

payment providers, including credit card companies (*e.g.*, PayPal, Visa, CashApp, Venmo) and other service providers (*e.g.*, Google, GoDaddy, LiveChat, Shopify, website hosts) to cease providing services to Defendants in connection with the offer for sale and sale of the Infringing Socks or any other products using or embodying the POCKET SOCKS® trademark, the Pocket Socks tradename, or any word or designation confusingly similar to the POCKET SOCKS® trademark or tradename, or any alternate spellings thereof;

6. Adjudge that each of the Defendants, by its unauthorized use of the POCKET SOCKS designation in connection with hosiery, and such other acts as it may have undertaken relating to that designation, have violated Plaintiff's rights under 15 U.S.C. §§ 1114, 1125(a), under California state law (including, without limitation, Cal. Bus. & Prof. Code § 17200 *et seq*.), under common law, and that they have done so willfully and for the purpose of violating Plaintiff's rights and damaging Plaintiff's goodwill and reputation in the POCKET SOCKS® trademark and tradename;

7. Adjudge that defendant Vida has breached the Forbearance Agreement;

8. Direct Defendants to provide Plaintiff with an identification in writing of any and all entities that are presently offering for sale or selling goods bearing the POCKET SOCKS designation in the United States supplied to them by or through Defendants or on Defendants' behalf, and inform them that they must immediately cease such use;

9. Direct Defendants to immediately recall any and all merchandise previously provided to any United States entity bearing, or offered in connection with, the POCKET SOCKS designation;

10. Enter an order, including pursuant to 15 U.S.C § 1118, directing Defendants to deliver for destruction all products, brochures, marketing materials, decals, stickers, signs, prints, packages, receptacles, wrappers, boxes, and advertisements in their possession or under their control, bearing any unauthorized

copy of any of the POCKET SOCKS® trademark, or any simulation, reproduction, counterfeit, copy, confusingly similar likeness, or colorable imitation thereof, and all plates, molds, matrices, programs and other means of making same;

11. That each Defendant provide Plaintiff in writing with the following information relating to Defendants' goods marketed, advertised, offered for sale, or sold under the POCKET SOCKS designation:

(i) the name, address and telephone number of each and every United States entity to whom Defendants have made available or otherwise provided any such products;

(ii) the total number of units distributed and sold;

(ii) the total number of units remaining in inventory; and

(iii) a full accounting as to the precise dollar amount of such products made available or provided and the profits recognized by Defendants in connection with such actions;

12. That Defendants be required to pay Plaintiff such damages as it has sustained as a consequence of Defendants' infringement of the of the POCKET SOCKS® trademark and trebling of those damages under 15 U.S.C. § 1117;

13. Compensatory damages according to proof;

14. Direct Defendants to pay the costs of corrective advertising;

15. Direct Defendants to pay Plaintiff's attorneys' fees and costs incurred in initiating and prosecuting this action;

16. Direct Defendants to pay punitive damages and exemplary damages according to proof;

17. That Plaintiff recover its actual damages, Plaintiff's lost profits, and Defendant's profits arising from Defendants' conduct complained-of herein;

18. That the Court award enhanced/treble profits and treble damages;

19. That the Court award, at Plaintiff's election, statutory damages in accordance with 15 U.S.C. § 1117(c) against each Defendant as a result of the

Defendants' willful infringement, in the amount of $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, or some other sum as the Court considers just;

20.    That Plaintiff be awarded interest, including pre-judgment interest, on the foregoing sums;

21.    That the Court direct such other actions as the Court may deem just and proper to prevent the public from deriving the mistaken impression that any products or services offered, advertised, or promoted by or on behalf of Defendants are authorized by Plaintiff or related in any way to Plaintiff's products or services; and

22.    For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DATED: July 29, 2021          FREEMAN, FREEMAN & SMILEY, LLP


By:    _/s/ Mark B. Mizrazi_
        TODD M. LANDER
        MARK B. MIZRAHI
        Attorneys for Plaintiff,
        POCKET SOCKS, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand and request a trial by jury of all issues raised that are triable by jury.

Respectfully submitted,

DATED: July 29, 2021          FREEMAN, FREEMAN & SMILEY, LLP


By:   */s/ Mark B. Mizrazi*
TODD M. LANDER
MARK B. MIZRAHI
Attorneys for Plaintiff,
POCKET SOCKS, INC.

# EXHIBIT 1









# EXHIBIT 2





# EXHIBIT 3



# United States of America

## United States Patent and Trademark Office

# Pocket Socks

**Reg. No. 4,200,363**

**Registered Aug. 28, 2012**

**Int. Cl.: 25**

**TRADEMARK**

**SUPPLEMENTAL REGISTER**

PAPEL, EVAN T. (CALIFORNIA SOLE PROPRIETORSHIP), DBA ZIPITGEAR.COM, 950 AVIATION BLVD
STE F
HERMOSA BEACH, CA 90254

FOR: HOSIERY, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 1-1-1975; IN COMMERCE 6-15-2002.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "SOCKS", APART FROM THE
MARK AS SHOWN.

SER. NO. 85-573,863, FILED 3-19-2012.

AISHA CLARKE, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION

WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten Years***
**What and When to File:**

> ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date). The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the
USPTO website for further information. With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

# EXHIBIT 4



# United States of America
## United States Patent and Trademark Office

# Pocket Socks

**Reg. No. 4,414,045**
**Registered Oct. 8, 2013**

**Int. Cl.: 25**

**TRADEMARK**

**PRINCIPAL REGISTER**

PAPEL, EVAN T. (UNITED STATES INDIVIDUAL)
11115 ORVILLE STREET
CULVER CITY, CA 90230

FOR: HOSIERY, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 6-1-2002; IN COMMERCE 6-1-2002.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NO. 4,200,363.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "SOCKS", APART FROM THE
MARK AS SHOWN.

SEC. 2(F).

SER. NO. 85-846,917, FILED 2-11-2013.

JERI J. FICKES, EXAMINING ATTORNEY



Deputy Director of the United States Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

*First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

*Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.*
*See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

# EXHIBIT 5



## Products

Sort by ~ Alphabetically, A-z

Passport Security Socks®
$27.95

Passport Security, Grand Cargo
from $27.95

Pocket Socks® Ankle Black, Large
$18.00

Pocket Socks® Ankle White, Medium
$18.00

Pocket Socks® Compression, Black, Large
$24.00

Pocket Socks® Compression, Black, Medium
$24.00

Pocket Socks® Compression, Black, XL
$24.00

Pocket Socks® Everyday Crew Black, Large
$18.00

Pocket Socks® Everyday Crew White, Large
$18.00

Pocket Socks® Everyday Crew White, Medium
$18.00

Pocket Socks® Peace & Love, Womens
$21.00

Pocket Socks® #1 Dad, Mens
$21.00

Pocket Socks® 420, Mens
$21.00

Pocket Socks®, Anchors Away, Mens
$21.00

Pocket Socks®, Argyle Grey, Mens
$21.00

Pocket Socks®, Aztec Black, Mens
$21.00

Pocket Socks®, Bacon n Eggs, Womens
$21.00

Pocket Socks®, Beer Me, Mens
$21.00

### FOLLOW US
### LEARN MORE
About Us
Contact Us
Testimonials
Media Requests
Intellectual Property
FAQ
Privacy Policy
Warranty
Refund Policy
Privacy Policy
Sizing
Monthly Giveaway
Affiliates
Shipping Policy & Rates
Wholesale
Gift Card and Gift Certificates

Our purpose is to design, produce and distribute a fun & function sock line unlike any other in the world. Our happy place is imagining a pair of Pocket Socks in every sock drawer.

We know there will be that perfect time for Pocket Socks, so don't be without them.

Your sock drawer will never be the same again.












Only $50.00 away from free shipping

BOGO 50% OFF

LOG IN     CART (0)

HOME   SHOP ALL   MENS   WOMENS   SPORT   COMPRESSION   PASSPORT   KIDS   ABOUT US   CONTACT US

## Products



Sort by · Alphabetically, A–Z

ADD TO CART +

Pocket Socks®, Unicorns, Womens
$17.95

ADD TO CART +

Pocket Socks®, USA Flags, Mens
$17.95

‹  1  2  3  ›  »




‡‡ FOLLOW US

💡 LEARN MORE

About Us
Contact Us
Testimonials
Media Requests
Intellectual Property
FAQ
Privacy Policy
Warranty
Refund Policy
Privacy Policy
Sizing
Monthly Giveaway
Affiliates
Shipping Policy & Rates
Wholesale
Gift Card and Gift Certificates

Our purpose is to design, produce and distribute a fun & function sock line unlike any other in the world. Our happy place is imagining a pair of Pocket Socks in every sock drawer.

We know there will be that perfect time for Pocket Socks, so don't be without them.

Your sock drawer will never be the same again.









